# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN STEWART III, | ) |
| Plaintiff, | ) |
| | ) No. 16 C 10377 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION | ) |
| Defendant. | ) |

## OPINION AND ORDER

After complaining that Defendant Illinois Department of Transportation ("IDOT") discriminated against him based on his disability and placed him on paid administrative leave, John Stewart III filed suit against IDOT, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. IDOT now moves for summary judgment. Because genuine issues of fact exist regarding both the availability and significance of potential overtime pay during the time Stewart was on leave and whether IDOT's reason for placing him on leave was merely pretext, the Court denies IDOT's motion for summary judgment.

## BACKGROUND[1]

Stewart, a disabled Navy combat veteran, has a degenerative neck, back, and spinal disability. Because of this disability, he has handicap parking placards. When IDOT hired Stewart in 2013 as an emergency traffic patrolman ("ETP"), he took and passed a physical examination. As an ETP, Stewart kept traffic lanes open, cleared debris from collisions, moved stalled vehicles, and assisted motorists with tire changes, fuel refills, or other small mechanical

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts and the supporting exhibits. All facts are taken in the light most favorable to Stewart, the non-movant.

issues. He learned of the physical element of his job during the application process and was aware that he would need to be able to lift ten to twenty pounds. On the forms accompanying the physical exam, Stewart responded "No" to the question "Have you ever had a doctor or health care professional recommend any permanent restrictions on your physical, mental, or emotional capabilities?" Doc. 39 ¶ 4. Stewart and his doctor, Dr. Ken Khuans, have stated numerous times that his disability does not affect his ability to perform the duties of his job. Georgina Syas, the current Personnel Service Manager for IDOT, was not aware of any instance between Stewart's hire and his leave where he was unable to perform the duties of his job.

On March 2, 2015, Stewart received a ticket from a Chicago police officer for parking his IDOT-issued vehicle in a handicapped parking space, even though he had his handicapped placard displayed on the dashboard. Once he was back at the IDOT garage, Stewart discussed the ticket with Zenon McHugh, a supervisor, who made negative remarks and indicated that he did not understand or believe Stewart's handicapped status. Stewart ultimately contested the ticket, and the traffic court dismissed it.

Stewart had similar discussions with McHugh about his lack of an apparent handicap after he began parking his personal vehicle in the IDOT garage's handicap spots. Stewart continued to park in the handicap spots despite McHugh's disbelief and negative remarks regarding Stewart's disability. Sometime during the week following his ticket, Stewart heard someone say over the work radio that he did not look disabled. Stewart believes McHugh made that statement.

On March 10, 2015, Stewart wrote a letter to McHugh's supervisor, John Gonzalez, notifying him of these events and stating that he would take his complaints to the next level. Gonzalez called Stewart and said that he would speak with McHugh, but Stewart reiterated that

he would move forward with his complaints. The same day Dr. Khuans wrote a letter to IDOT to explain that Stewart's service-related disability qualified him for the handicap parking placards, and that failure to respect the nature of the disabling condition and the use of the parking placard could be construed as a violation of the ADA. The next day, Stewart filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), alleging race, disability, and veteran's status discrimination.

On April 30, 2015, Stewart filed a second charge with the IDHR, alleging retaliation in connection with his interactions with McHugh, including that McHugh had knocked down the poles holding the handicapped parking signs in the IDOT garage. Three months later, on July 30, 2015, IDOT placed Stewart on paid administrative leave based in part on an investigation into whether Stewart violated rules of reporting regarding his disability. Just over a week after the start of his leave, Stewart filed a third charge with the IDHR alleging retaliation for his filing of the previous discrimination and retaliation charges.

Shortly thereafter, IDOT held a pre-disciplinary hearing on the charges that Stewart failed to follow procedures relating to truth in reporting when he did not disclose that he had a disability on his physical exam. The day after the hearing, on August 18, 2015, Dr. Khuans sent a second letter to IDOT explaining that Stewart was fit for full-time employment without any physical, mental, or emotional restrictions despite his disability. IDOT ultimately did not issue any discipline. But IDOT did not immediately take Stewart off leave despite finding no reason for discipline and receiving the letter from Dr. Khuans. This led Dr. Khuans to write a third letter on September 1, 2015, explaining again that he had never ordered any type of physical, mental, or emotional permanent restriction, and that Stewart had therefore filled out his physical exam forms correctly. IDOT reinstated Stewart almost two months later, on October 26, 2015.

In the weeks before his administrative leave, Stewart earned over a third of his gross income from overtime pay. IDOT offers overtime in order of seniority at first and then cycles through each of its ETP employees so that the total offered overtime hours, including both accepted and refused, are approximately even for each employee. During the time Stewart was on leave, he stated there was "an abundant amount of overtime." Doc. 39-5 at 77:17.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

Title VII and the ADA prohibit retaliation against employees who engage in statutorily protected activity. *Koty v. DuPage County, Ill.*, 900 F.3d 515, 519 (7th Cir. 2018) (ADA); *Lord*

4

*v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (Title VII).  Because the anti-retaliation provision of the ADA uses similar language to that in Title VII, courts analyze both under Title VII's standards.  *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).  To prevail on his claims, Stewart must establish that (1) he engaged in a statutorily protected activity, (2) he suffered a materially adverse action, and (3) a causal connection exists between the two.  *Lord*, 839 F.3d at 563.  Stewart's filing of charges of discrimination and retaliation with the IDHR is a statutorily protected activity.  42 U.S.C. § 2000e-3.  However, IDOT challenges the remaining two elements: that Stewart did not suffer a materially adverse action and that any action taken by IDOT was not causally connected to his statutorily protected activity.

I.   **Materially Adverse Action**

There is some disagreement between the parties as to the proper standard for a materially adverse action in retaliation cases.  IDOT initially cites an outdated standard, requiring a "significant change in employment status."  *Stutler v. Ill. Dep't. of Corrs.*, 263 F.3d 698, 703 (7th Cir. 2001).  Although this remains the standard for discrimination claims, the Supreme Court has overruled this formulation in retaliation cases: "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).  Instead, for retaliation purposes, an action is materially adverse if it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.*, at 68.

Stewart claims that he suffered a materially adverse action when IDOT placed him on paid administrative leave and denied him the opportunity to earn overtime pay.  Standing alone, being placed on paid administrative leave pending an investigation is not a materially adverse

5

action. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 786 (7th Cir. 2007) (finding that, for purposes of retaliation claim, plaintiff did not suffer an adverse action when the university placed him on paid administrative leave pending the results of his fitness-for-duty psychological exams). However, "the denial of the opportunity for overtime pay, when that pay is a significant and recurring part of an employee's total earnings, can constitute an adverse employment action." *Lewis v. City of Chicago*, 496 F.3d 645, 653–54 (7th Cir. 2007). Stewart has presented evidence that overtime pay constituted a significant portion of his income from mid-May to the beginning of July prior to his suspension. Doc. 39-20 (Stewarts' pay stubs from May 15, 2015, to July 1, 2015, showing that he made over a third of his gross pay in overtime pay). Stewart also testified that overtime was readily available during the time of his administrative leave and that the opportunity for overtime was only based on seniority to start the cycle and then evenly spread out among the employees, suggesting that he would have had the opportunity to obtain overtime pay if he was not placed on leave, regardless of his level of seniority. Doc. 39-5 at 77 ("Q: What's overtime like between July and when you would have returned from your administrative leave? A: It is an abundant amount of overtime"); *id.* at 81 ("Q: So how does seniority factor into the overtime? . . . A: To start. It only kicks in to start."). Thus, Stewart has created a genuine issue of material fact regarding whether overtime pay during the period of his administrative leave would have been "significant and recurring," so as to give rise to a materially adverse action. *Lewis*, 496 F.3d at 654.

## II.     Causal Connection

Despite finding that a genuine issue of material fact exists as to a materially adverse action, the Court may still grant IDOT summary judgment if Stewart cannot provide evidence to show that engaging in the protected activity was the but-for cause of the materially adverse

6

action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) ("[R]etaliation claims must be proved according to traditional principles of but-for causation"). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* The Seventh Circuit has simplified this question recently to the straightforward inquiry: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the [adverse action]?" *Lord*, 839 F.3d at 563 (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

IDOT argues that the discovery of Stewart's disabled status caused concern regarding his ability to safely do his job and his truthfulness in filling out his physical exam form. IDOT claims that these concerns were the true cause for placing Stewart on administrative leave, not Stewart's charges of discrimination and retaliation; therefore, he cannot demonstrate causation. Stewart responds that IDOT's given reasons are pretextual because of IDOT's delay in placing him on leave after learning of his disability and its delay in reinstating him once IDOT's concerns had been resolved, and that IDOT's motive was Stewart's protected activity.

Though "the dispositive question remains whether a reasonable jury could find a but-for causal link between the protected activities and adverse actions at issue," because IDOT "has presented non-retaliatory reasons for [its] conduct, the true question is whether the proffered reasons were pretext for retaliation." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017). Stewart can avoid summary judgment if there is a genuine issue of material fact on the question of pretext. *Lord*, 839 F.3d at 564 ("Of course, an employer's proffered justifications are always susceptible to attack, and Lord can avoid summary judgment if a material factual dispute exists on the question of pretext."). "[A] pretext analysis evaluates

7

the honesty of the employer's explanation, not its validity or reasonableness." *Seymour-Reed v. Forest Pres. Dist. of DuPage County*, 752 F. App'x 331, 335 (7th Cir. 2018).

Here, a troubling timeline of events casts doubt on the honesty of IDOT's explanation for placing Stewart on administrative leave. IDOT learned of Stewart's disabled status sometime in early March 2015, when Stewart received a parking ticket and Dr. Khuans sent a letter explaining that Stewart is entitled to his handicap parking placards. However, IDOT did not place Stewart on administrative leave until almost five months later at the very end of July 2015. IDOT was unaware of any other events between the ticket and the beginning of Stewart's administrative leave that caused further concern for Stewart's ability to perform his job safely. This nearly five-month delay between when IDOT discovered the alleged safety issue and when it placed Stewart on leave to investigate the alleged issue raises questions about whether IDOT honestly held these concerns, because a reasonable juror could find that honest safety concerns should have prompted IDOT to act much sooner. *Culver v. Gorman & Co.*, 416 F.3d 540, 547 (7th Cir. 2005) ("Summary judgment is appropriate only if a reasonable fact finder would be compelled to believe [defendant]'s explanation, and [plaintiff] can avoid summary judgment by pointing to specific facts that place the employer's explanation in doubt."); s*ee Collins v. Cohen Pontani Lieberman & Pavane*, No. 04 CV 8983(KMW)(MHD), 2008 WL 2971668 (S.D.N.Y. July 31, 2008) (finding delay or failure to investigate may bolster an inference of discriminatory animus).

Even more troubling is IDOT's admission that Dr. Khuans' August 18, 2015 letter "extinguished" its "concerns as to whether Plaintiff had recently suffered a disabling condition that would make it unsafe for him to do his job." Doc. 49 at 7. IDOT's stated reasons for placing Stewart on administrative leave were, by its own admission, extinguished less than three

weeks after the start of his leave, yet IDOT did not reinstate Stewart for more than two months after receiving the letter. A reasonable juror could conclude that IDOT did not honestly believe its explanation and was instead punishing Stewart for his protected activity, including the final charge of retaliation he filed once the leave started, by keeping him on leave and continuing to deny him the opportunity to earn overtime pay. *King v. Preferred Tech. Grp.*, 166 F.3d 887, 894 (7th Cir. 1999) (where evidence calls into question an employer's credibility and honesty, and shows "that the legitimate, non-discriminatory reason for the adverse employment decision may be false, . . . the grant of an employer's motion for summary judgment is inappropriate.").

Especially in employment discrimination and retaliation cases, "where intent and credibility are crucial issues," courts must apply the summary judgment standards "with added rigor." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993). Here, the Court finds cause to question IDOT's proposed reason for placing Stewart on leave and not reinstating him for over two months after its concerns had been, by its own admission, "extinguished." Doc. 49 at 7. Therefore, the Court finds "that the evidence, taken in the light most favorable to [Stewart], creates a triable issue of pretext." *Culver*, 416 F.3d at 547 (finding questions of timing regarding employer's stated reasons for firing created triable issue of pretext).

## CONCLUSION

For the foregoing reasons, the Court denies IDOT's motion for summary judgment [38].

Dated: May 14, 2019

SARA L. ELLIS
United States District Judge

9